[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15831
Non-Argument Calendar

_____

D.C. Docket No. 0:16-cr-60094-BB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADRIAN GALVIN RUIZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 13, 2017)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

After a jury trial, Adrian Galvin Ruiz was convicted of knowingly attempting to persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). On appeal, Ruiz argues that the district court abused its discretion in admitting evidence, pursuant to Federal Rule of Evidence 404(b), of prior communications with an undercover detective, regarding a potential sexual encounter with a minor. Because the district court did not abuse its discretion in admitting the evidence, we affirm.

## I.

Ruiz became the subject of an undercover law-enforcement operation after he contacted a law-enforcement agent who was posing as "Remy" on Tribe, a social-networking website that caters to men. "Remy," according to the profile created by Dan Cannon, a special agent with the Florida Department of Law Enforcement and a member of the FBI's Internet Crimes Against Children taskforce, was a dad whose his interests included being a "boy lover."

Ruiz contacted "Remy" (Cannon) by email on March 22, 2016. In his email, Ruiz stated that he found Cannon's profile on Tribe and "love[d] the same thing you do" and "would love to come play with you and discuss." Over the next week, Cannon and Ruiz, who identified himself as "Adam," continued to communicate via email. Cannon represented to Ruiz that he was the father of a 13-year-old son named "Donnie" and that he was interested in watching his son participate in

sexual activities with adults. They discussed where they were from, the fact that Ruiz was interested in a real-life encounter versus fantasy, and the kind of sexual experiences that Ruiz wanted.

Cannon and Ruiz ultimately established rules regarding a potential sexual encounter between Ruiz and the fictitious Donnie. Cannon instructed Ruiz to bring condoms, lubricant, and a "cool T-shirt" for Donnie. By March 30, 2016, just over one week after their initial contact, Cannon and Ruiz agreed to meet on March 31 at the La Quinta Inn in Sunrise, Florida. Cannon made a reservation and forwarded a copy to Ruiz.

In the days leading up to that encounter, Cannon had sent Ruiz a picture of Donnie, which was actually a "regressed photograph of a current law enforcement officer." Ruiz and Donnie (still Cannon) also started communicating directly. Through email, Cannon and Donnie discussed the fictitious child's sexual experiences and interests.

At around 6:30 p.m. on the day of the agreed meeting, Cannon observed an individual, whom he identified as Ruiz, crouched down in a vehicle in the parking lot of the hotel. Cannon told the other law-enforcement officer to get in place. Meanwhile, Ruiz and Cannon continued to communicate by email. Eventually, Ruiz informed Cannon that he had arrived at the hotel, and Cannon walked out to meet him. Carrying a messenger bag, Ruiz approached Cannon, and the two men

confirmed their fictitious identities.  After confirming that Ruiz remembered the rules, Cannon gave Ruiz "a big hug."  Cannon told Ruiz that Donnie was upstairs, and they walked into the hotel lobby towards a stairwell.  Cannon then signaled to the other officers, who approached and apprehended Ruiz.  Ruiz stated, "I'm not here.  I'm not here."  Inside Ruiz's messenger bag officers found five condoms, a bottle of lubricant, and a superhero T-shirt.

Following his arrest, a federal grand jury issued a one-count indictment charging Ruiz with knowingly attempting to entice a minor to engage in unlawful sex.  *See* 18 U.S.C. § 2422(b).  Ruiz pled not guilty.

At trial, the government introduced, in addition to the above evidence of Ruiz's charged conduct, evidence of a prior instance where Ruiz had engaged in similar conduct.  The district court admitted the evidence under Rule 404(b), Fed. R. Evid.  According to Detective Nick Masters[1], Ruiz had posted an advertisement on Craigslist entitled, "Kinky Dads or Bros for Taboo, M4M," in November 2015 and updated it the following month.  Masters responded to the ad in January 2016, stating that he was "a taboo dad also into young."  Thereafter, Masters and Ruiz exchanged a series of emails about their sexual interests.  Masters, posing as the father of a 7-year-old son and an 11-year-old daughter, stated that he was "not into

---

[1] Masters was a Broward County Sheriff's Deputy assigned to the Internet Crimes Against Children and Human Trafficking Task Force and a full-time task-force officer with the Federal Bureau of Investigation Violent Crimes Against Children Unit.

fantasy or sex email" and "not looking to play with adults." Ruiz indicated that he was looking for the same thing, detailed the sexual activity he planned to engage in with Masters's son, and sought to set up a meeting. Ultimately, however, Ruiz stopped responding to Masters, and no meeting occurred.

Ruiz testified in his own defense and broadly confirmed Cannon's testimony about his conduct. He explained that he had arrived at the hotel believing that he was about to engage in sexual activity but ultimately decided not to go through with it. As he walked with Cannon towards the stairwell in the hotel, he said, "I can't do this." Cannon then grabbed his arm and told him, "It's better if you don't run." Ruiz further testified that he had been sexually molested repeatedly as a child and did not want to "traumatize someone and have them carry it for their entire life, like I've had to do." Ruiz admitted that he had posted the Craigslist ad and communicated with Masters. He indicated that when he was communicating with Masters, "it was still fantasy," but with Cannon, he became eager to meet Donnie "because the lines between fantasy and reality did become blurred."

The jury found Ruiz guilty of attempted enticement. The district court sentenced him to the mandatory minimum of 120 months of imprisonment. Ruiz now appeals.

## II.

On appeal, Ruiz argues that the district court abused its discretion in allowing the introduction of the communications with Masters. In Ruiz's view, the communications were not relevant to any issue other than his propensity and character, and in any case, "demonstrated only talk." Ruiz also contends that the danger of unfair prejudice resulting from introduction of the evidence substantially outweighed any possible probative value.

We review the admission of evidence of a defendant's prior bad acts under Rule 404(b), Fed. R. Evid. *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008). A court abuses its discretion when its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *United States v. Baker,* 432 F.3d 1189, 1202 (11th Cir. 2005).

Rule 404(b) prohibits the admission of evidence of prior bad acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). We have explained that "Rule 404(b) is one of inclusion which allows extrinsic evidence unless it tends to prove only criminal

6

propensity." *United States v. Sanders*, 668 F.3d 1298, 1314 (11th Cir. 2012) (internal quotation marks omitted).

We apply a three-part test to determine the admissibility of Rule 404(b) evidence. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). First, the evidence must be relevant to an issue other than the defendant's character. *Id.* Second, sufficient proof must exist for a jury to find that the defendant committed the act or acts in question. *Id.* And third, "the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403." *Id.* The second prong is not at issue because Ruiz does not dispute having engaged in the communications with Masters.

Here, the district court did not abuse its discretion in admitting the evidence of the prior communications with Masters as relevant to Ruiz's intent. By pleading not guilty and then specifically contesting whether he had the intent necessary to commit the offense, Ruiz made his intent a material issue in the case. *See United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998) (stating that when a defendant pleads not guilty, intent becomes a material issue, absent affirmative steps by the defendant to remove the issue of intent). That is, the government was required to prove that Ruiz "acted with a specific intent to persuade, induce, entice, or coerce a minor to engage in unlawful sex." *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004); *see* 18 U.S.C. § 2422(b).

7

Here, the evidence of the prior communications with Masters was probative of Ruiz's intent to entice a minor.  For extrinsic evidence to be admissible as relevant to intent, the government needs to show that the extrinsic conduct shared the same state of mind as the charged offense.  *See Edouard*, 485 F.3d at 1345. The prior communications meet that test for at least two reasons.  First, the communications demonstrated that Ruiz had a sexual interest in children, which is a component of the intent underlying the charged conduct.  Evidence indicating that Ruiz was sexually interested in young boys makes it more likely that he intended to persuade or entice a 13-year-old boy to engage in sexual activity with him.  *See* Fed. R. Evid. 401.

Second, the prior communications reflect an intent to set up a sexual encounter with a young boy, which is the same intent at issue in the charged offense.  Just a few months before the charged conduct, Ruiz communicated with an undercover officer who was pretending to the father of a young boy.  In those communications, Ruiz affirmed his interest in having a sexual encounter with the young son, communicated about what specific sexual activities he was interested in doing with the young boy, and sought to set up a time and a place for meeting. The fact that no meeting in fact occurred does make the evidence irrelevant.  The prior communications still make it more likely that Ruiz's interest in communicating with "Donnie" extended beyond mere fantasy or just talk and that

8

he intended to follow through with his enticement of a minor to commit an unlawful sexual act. Accordingly, the first prong was satisfied because the evidence was relevant to Ruiz's intent.

Turning to the third prong of our third-part test, the district court did not abuse its discretion in concluding that the probative value of the prior communications was not substantially outweighed by the danger of unfair prejudice. *See Edouard*, 485 F.3d at 1344. When conducting the balancing analysis under Rule 403 for extrinsic evidence, courts should conduct a "common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997) (internal quotation marks omitted); *see United States v. Jernigan*, 341 F.3d 1273, 1282 (11th Cir. 2003). All three factors favor admissibility.

For the reasons explained above, the evidence was important to the government case, particularly to rebut Ruiz's contention that he did not intend to follow through with the sexual activity he discussed with "Donnie." Moreover, given the substantial similarity of the prior communications to the communications underlying the charged conduct, the evidence was highly probative of his intent to entice a minor to commit sexual acts. In addition, the short timespan between the

9

extrinsic conduct and charged offense—less than three months—further indicates the probative value of the communications.

As for the danger of unfair prejudice, we have affirmed the admission under Rule 403(b) of evidence substantially more prejudicial than the communications at issue here. *See, e.g.*, *United States v. Woods*, 684 F.3d 1045, 1064–65 (11th Cir. 2012) (affirming admission of defendant's statement "about molesting his niece"). Additionally, any danger of unfair prejudice was minimized by the district court's instruction that the jury consider evidence of Ruiz's similar conduct "for very limited purposes" only, including to determine his state of mind. *See United States v. Brown*, 665 F.3d 1239, 1245, 1247 (11th Cir. 2011) ("[T]he district court gave a limiting instruction to the jury, which cured any possible unfair prejudice posed by the 404(b) evidence.") (alteration adopted) (internal quotation marks omitted).

In sum, the district court did not abuse its discretion by admitting Ruiz's prior communications under Rule 404(b).

**AFFIRMED.**